**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| W.S.,<br><br>Plaintiff,<br><br>v.<br><br>Cassandra Daniels, Ursula Best, South Carolina Department of Social Services,<br><br>Defendants. | C/A 16-cv-01032-DCC<br><br><br>**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES** |
| W.S.,<br><br>Plaintiff,<br><br>v.<br><br>Cassandra Daniels, Ursula Best, South Carolina Department of Social Services,<br><br>Defendants. | C/A 16-cv-01280-DCC<br><br><br>**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES** |

Pursuant to 42 U.S.C. § 1988(b), Plaintiff W.S. moves to recover his attorneys' fees and costs through April 4, 2019, in the amount of $1,278,728 for fees and $55,362.12 in costs and other litigation expenses.

I.    **Introduction.**

Plaintiff filed his complaint against Defendants Daniels, Best, and the South Carolina Department of Social Services (SCDSS) and the Boys Home of the South (BHOTS) and numerous BHOTS employees and board members in Civil Action No. No. 8:16-cv-01032-MGL on April 1, 2016.  Dkt. No. 1.[1]  Plaintiff filed his state claims and some § 1983 claims in the Abbeville County

---

[1] All references to pleadings filed on ECF are from *W.S. v. Daniels*, Civil Action No. 8:16-cv-01032-MGL.  Pleadings referred to in *W.S. v. Daniels*, Civil Action No. 8:16-cv-01280

Court of Common Pleas, Civil Action 2016-CP-01-00085, on April 1, 2016.[2] *W.S. v. Daniels*, Civil Action No. 8:16-cv-01280, Dkt. No. 001-001. Defendants Daniels, Best, and SCDSS subsequently removed the Abbeville case to District Court. *W.S. v. Daniels*, Civil Action No. 8:16-cv-01280, Dkt. No. 001. The two cases were consolidated on June 8, 2016, with 8:16-cv-01032 designated as the primary case. Dkt. No. 17.

Subsequent to Plaintiff filing this matter against the SCDSS and BHOTS Defendants, BHOTS began the process of conveying over 120 acres of property to Trail Life USA while winding up its operations. Exhibit 1, Pg. 6-11, *W.S. v. BHOTS*, 2016-CP-23-02644. Plaintiff was concerned that BHOTS lacked sufficient insurance coverage to settle his claims against the BHOTS Defendants and filed a Writ of Attachment in the Greenville County Court of Common Pleas in Civil Action No. 2016-CP-23-02644. Exhibit 1, *7-8, *W.S. v. BHOTS*, 2016-CP-23-02644.

After conducting the Rule 16, Fed.R.Civ.P. Scheduling Conference on June 1, 2016, the parties agreed to stay this matter until the writ of attachment proceedings were adjudicated. Dkt. No. 13. The Court entered an order staying this matter on June 7, 2016. Dkt. No. 14. Plaintiff's claims for the Writ of Attachment were tried on October 11, 2016 and the Master In Equity's ruling was held in abeyance pending mediation of Plaintiff's claims in this matter with the BHOTS Defendants on December 23, 2016.[3]

---

will specify the case number.

    [2] Jurisdiction of claims under the South Carolina Tort Claims act rests in Court of Common Pleas and subsequent removal to District Court by the state waives 11th Amendment Sovereign Immunity and allows the District Court to adjudicate such claims.

    [3] The South Carolina Insurance Reserve Fund does not value sex abuse claims more than $300,000.00 and the facts of this matter had not been satisfactorily developed as to the SCDSS Defendants. Plaintiff did not conduct early mediation with the SCDSS Defendants because mediation would have been futile and wasted resources and time. Plaintiff explained his reasoning to the Court in more detail in Dkt. No. 27.

The parties filed a Stipulation of Dismissal for the BHOTS Defendants on January 11, 2017.  Dkt. No. 29.  That same day, Plaintiff and the three remaining SCDSS Defendants filed a Join Motion to Amend the Scheduling Order.  Dkt. No. 31.  The Court lifted the June 7, 2016 stay in January 12, 2017.  Dkt. No. 32.  It is significant that Plaintiff asked the Court for a shorter litigation schedule than Defendants as it shows the Defendants intended early in the litigation to delay and prolong this litigation.  Dkt. No. 31.

After the Court issued a scheduling order on January 12, 2017, Plaintiff sent discovery requests to the SCDSS Defendants and a subpoena to BHOTS in late January and early February 2017.  Defendants failed to respond to Plaintiff's Requests to Admit and blamed Plaintiff for placing the Requests to Admit in the back of the discovery requests.  Defendants objected to almost all of Plaintiff's Discovery Requests, even the production of Plaintiff's own SCDSS file and they also objected to the subpoena Plaintiff issued to BHOTS.  All of Defendants' production was a document dump and Defendants did not specifically refer to any document Bates Numbers in their responses to Plaintiff's Interrogatories and Requests for Production, leaving Plaintiff to figure out which documents Defendants thought were applicable to Plaintiff's discovery requests.  The typical response was, "See attached documents…"  Dkt. No. 77-13, *11-22.

Defendants also referred Plaintiff to documents it had produced in other cases which were sealed by virtue of the Court's confidentiality order.  Dkt. No. 77-13, *14, 17-18, 21-22. Defendants refused to produce these documents until ordered by the Court, and even then, it did not produce all of the documents.  Defendants objected to producing their insurance policy in violation of Rule 26(a)(1)(A)(iv), Fed.R.Civ.P.  Dkt. No. 77-13, *22.  Defendants also refused to produce any training documents even through it controlled the contractor who provided the training.  Dkt. No. 77-13, *13.  Defendants even objected to producing their own policy and

procedure manuals and directed Plaintiff to obtain the 2017 version posted on the internet.  Dkt. No. 77-13, *14.

Plaintiff asked the Court to conduct a discovery conference regarding Defendants' failures to respond to discovery on March 27, 2017, and continued to ask for the next several months, May 20, 2017; July 5, 2017; and July 20, 2017.  Exhibit 2.  The parties were required to file a Joint Submission regarding the discovery issues on October 9, 2017 and a telephone conference was held on October 12, 2017.  Dkt. No. 77 and 78.

Plaintiff was finally allowed to file a motion to compel on November 3, 2017.  Dkt. No. 79.  On December 6, 2017 the Court again ordered the parties to confer and send a Joint Status Report by December 18, 2017.  Dkt. No. 86.  After this matter was transferred to the Honorable Donald C. Coggins, a Status Conference was scheduled for January 11, 2018.  Dkt. No. 92 and 95. The Court granted almost all of the discovery requests and Plaintiff asked the Court to order Defendants to answer and respond.  Dkt. No. 101.  On March 6, 2018 Defendants were given an additional 45 days to produce discovery.

By July 27, 2018 Plaintiff was again required to file a motion to compel regarding the same discovery.  Dkt. 141.  Defendants refused to provide deposition dates, emails, disciplinary files of Daniels and Best, case staffings, complete documents instead of one page out of two, five, or thirteen pages, missing dictation, and dictation that was printed on five- or six-point font.

With a partial amount of discovery in hand, Plaintiff also filed a motion to amend his complaint.  At the hearing on August 20, 2018, the Court cautioned the Defendants regarding discovery abuse and granted almost all of Plaintiff's discovery requests.  Dkt. No. 152.  The Court also denied Plaintiff's motion to amend his complaint because the Court found Plaintiff's motion was not timely.  Over a year and a half of time and several court orders were needed before SCDSS

Defendants finally answered and responded to Plaintiff's first set of discovery requests and SCDSS still failed to produce emails it had produced in previous litigation and numerous documents that it referred to in its own files!

Defendants' objections included asserting attorney-client and work product privilege to employee disciplinary documents that were clearly not privileged. This foot dragging lasted over a year and a half and they still asserted privilege through trial.

On November 19, 2018 Plaintiff filed a consent motion to excuse mediation. Counsel for Plaintiff was very experienced in litigating child abuse actions against SCDSS and informed the Court that with the Insurance Reserve Fund's current policies, mediation would be futile. Dkt. No. 160. Following the Court's direction, the parties conducted mediation and SCDSS's offer did not change.

After the Court set trial for the March 2019 Term of Court, Plaintiff filed several Motions in Limine addressing the complex legal considerations of a child sex abuse case. This included a motion addressing Rule 412, Fed.R.Evid., also known as the Rape Shield Law; a motion regarding consent and the common law Rule of Sevens, and motions regarding issue preclusion. While not all of these motions were successful, these motions indelibly helped shape the course of the trial and informed the Court and opposing counsel of the complex issues involved in this matter.

On December 19, 2018 Defendants responded to Plaintiff's Requests to Admit regarding liability and they denied these requests. Exhibit 3. *See also*, Dkt. No. 198-1. At trial, these issues were litigated and Plaintiff prevailed. See Verdict Forms.

On the other hand, Defendant only presented three discovery issues that the Court had to address. (1) the production of the confidential settlement agreement with the BHOTS Defendants; (2) the Rule 35 examination with Avram Mack, M.D. and (3) Responding to questions of

Plaintiff's sexual history at BHOTS and addressing the complicated issue of consent through the eyes of a 10-13 year old boy with an I.Q. of 76.

Regarding the first issue, Plaintiff objected to the production of the confidential settlement agreement because he could not consent to the production without the BHOTS Defendants' consent. The SCDSS Defendants refused to attempt to contact the BHOTS Defendants to address these issues. The Court issued an order to produce the document, which is what Plaintiff was needed to fulfill his duties as a signatory to the agreement. Regarding the second issue, Plaintiff's objections to Dr. Mack's Rule 35 Examination were made to create some limitations. Plaintiff had observed that Dr. Mack examined a 9 year old boy for four hours, which is not simply bad medicine, it is tortious to examine a 9 year old with ADHD and the attention span of a fruit fly for that long of a period. The Defendants would not consent to limiting the length of the examination. The Court recognized that a psychiatric medical examination should be limited in time and ruled accordingly. In regards to the third issue, while the Court ordered to Plaintiff to respond to the Defendants interrogatories regarding W.S.'s sexual history at BHOTS, the Court also understood that recalling and interpreting the complicated issue of sex in the eyes of a 10-13 year old child was complicated and this was reflected in the Court's trial rulings. There were no complaints from Defendants that Plaintiff was stonewalling in the production of documents and responses to discovery requests.

From the beginning of litigation until Defendants' opening arguments, Defendants asserted that W.S. was a sexual predator. Plaintiff had to defend this allegation and the trial exhibits were voluminous because Plaintiff included exculpatory evidence to defend Defendants' assertions.

At the Defendants' opening argument to the jury, Defendants admitted or partially admitted the majority of the requests to admit that they had denied. At the close of Plaintiff's case and upon

Defendants' Motion for Directed Verdict, Plaintiff was still battling to keep his 42 U.S.C. § 1983 claims alive.  On March 22, 2019, after three days and a quarter hour of trial, the case was given to the jury.  The jury returned a verdict for Plaintiff on his state claims – both state claims against SCDSS, and against Defendants Daniels and Best for the 42 U.S.C. § 1983 claims.

Since Plaintiff's counsel, Robert Butcher, successfully petitioned for the Fourth Circuit Court of Appeals to recognize a qualified immunity standard for substantive due process violations in *Doe ex rel. Johnson v. SCDSS*, 597 F.3d 163 (4th Cir. 2010), this matter was the first case to go to a jury trial.  Other cases brought by Plaintiff's counsel have settled over the past nine years for various reasons such as additional settlements with private parties, individual financial considerations, or the desire of abuse victims not to testify.

In addition, Plaintiff's counsel has attempted to flesh out the law of occurrences as they pertain to the South Carolina Tort Claims Act amidst the clearly ambiguous guidance provided by the South Carolina Supreme Court in *Chastain v. AnMed Health Foundation*, 388 S.C. 170, 694 S.E.2d 541 (S.C. 2010) and *Boiter v. South Carolina Dept. of Transp.*, 393 S.C. 123, 712 S.E.2d 401 (S.C. 2011).  Even when the law of occurrences has gone to the jury, the law of occurrences has been difficult for the jury to understand.  See also, *Knox v. United States*, Case No. 0:17-cv-00036-CMC, 2018 U.S. Dist. LEXIS 111445 (D.S.C. July 3, 2018).

If the Court felt as if it were plowing new ground – which it was – Plaintiff's counsel were also hoeing the same row, as this § 1983 litigation was not feasible until 2010.

## II.    Discussion.

### a.  42 U.S.C. § 1983 Claims.

This case sought to correct the injustice of the violation W.S.'s 14th Amendment Right to personal safety and receipt of adequate medical treatment while in the care and custody of SCDSS

and under the protection of Daniels and Best. After a year and a half of foot dragging and stonewalling by the SCDSS Defendants, Plaintiff was finally able to prepare for trial and prevail when the Jury issued its verdict.

Regarding Plaintiff's failure to protect claims, the Jury found that Cassandra Daniels was deliberately indifferent and awarded W.S. $15,000 in compensatory damages and $15,000 in punitive damages. The jury similarly found that Ursula Best was deliberately indifferent and awarded damages of $18,500 in compensatory damages and $18,500 in punitive damages.

As to Plaintiff's failure to treat claims, the Jury found that Cassandra Daniels was deliberately indifferent and awarded W.S. $15,000 and they also awarded punitive damages in the amount 0f $15,000. The jury similarly found that Ursula Best was deliberately indifferent and awarded caused damages to W.S. and awarded $18,500 and they also awarded $18,500 in punitive damages.

Accordingly, attorneys' fees are authorized under 42 U.S.C. § 1988(b): "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…"

The Supreme Court has held that fees to prevailing civil rights plaintiffs should be awarded as a matter of course, except where unusual special circumstances – not present here – dictate otherwise. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). See also, *Doe v. Kidd*, 419 Fed. Appx. 411, at page 8 (4th Cir. 2011) (Unpublished).

Attorney's fees awards "are an integral part of the remedy necessary to obtain compliance with the civil rights laws." *Anderson v. Morris*, 658 F.2d 246, 248 (4th Cir. 1981), and, as such, should be "adequate to obtain competent counsel." *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984). Where the prevailing party has

obtained essentially full relief, as here, the result should be a "fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Of particular note in this case, Congress specified and *Hensley* repeated that "it is intended that the amount of fees awarded…be governed by the same standards which prevail in other types of equally complex federal litigation, such as antitrust cases, and not be reduced because the rights involved may be non-pecuniary in nature." *Hensley* at 430.

The District of South Carolina requires applicants for attorney's fees and costs to address the twelve factors in *Barber v. Kimbrell's*, 577 F.3d 216 (4th Cir. 1978) and "state any exceptional circumstances and the ability of the party to pay the fee." LR 54.02(A). The *Barber* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Two of the twelve factors – the attorney's reasonable hourly rate and the number of hours reasonably spent – are typically multiplied to produce a "lodestar" which is presumptively the appropriate fee award. In that sense, the other ten factors are ordinarily reviewed simply to determine whether an enhancement or reduction should be applied to the lodestar amount.

For the Court's assistance, plaintiff will address both approaches below. Plaintiffs note two points of special interest. First, several of the *Barber* factors would dictate an upward adjustment of the award in this case. These "enhancing" factors serve to counterbalance any

arguments that defendants may make in support of any downward adjustment. Second, this petition includes a request for compensation for time spent in the cognate state proceedings which began in 2005. Compensation for that time is supported by caselaw and the specific facts of this case, and that issue is addressed separately in part C below.

### a. Attorneys for W.S.

Most of the work in this case was performed by Robert Butcher, Heather Hite Stone, Thomas E. Hite, III, and Thomas E. Hite, Jr., small town attorneys from Camden and Abbeville, and their paralegals. These four named lawyers have filed Declarations as to their rates (Exhibits 4-6), Supported by Declarations or Affidavits of other members of the Bar (Exhibits 8-10). Each of these four lawyers are widely regarded within their professions and as trial attorneys and Robert Butcher and Heather Stone focus their practice in the vindication of the rights of abused children.

### i. Robert Butcher.

Robert Butcher was admitted to the Bar in June 2006. One of the first civil rights lawsuits he filed was *Doe ex rel. Johnson v. SCDSS*, 3:06-cv-03663-JFA (D.S.C. 2006). He primarily practices with his wife, Deborah Butcher, at the Foster Care Abuse Law Firm in Camden, South Carolina and specializes in civil rights actions on behalf of foster children harmed in foster care. He was a lead attorney in two important civil rights actions in the Fourth Circuit – *Doe ex rel. Johnson v. SCDSS* and *Occupy Columbia v. Haley*, 738 F.3d 107 (4th Cir. 2013) (We also hold that the right of the protesters to assemble and speak out against the government on the State House grounds in the absence of valid time, place, and manner restrictions has been clearly established since *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963) (Petitioner's Counsel was Matthew J. Perry)).

Robert Butcher's work in *Doe ex rel. Johnson v. SCDSS* allowed Children's Rights, a public interest law firm out of New York, to institute the class action against SCDSS in *Michelle H. v. McMaster*, 2:15-cv-00134-RMG, which is currently being litigated before Judge Gergel. See *Michelle H.*, 2:15-cv-00134-RMG, Dkt. No. 32-1. Before the *Johnson* case, public interest law firms did not have the legal mechanism to seek wholesale injunctive relief against state social services agencies on behalf of foster children within the Fourth Judicial Circuit.

Since *Michelle H.* was filed, SCDSS has been placed under Court-approved monitors to address (1) caseworker and supervisor caseload limits, (2) caseworker visitation of foster children, (3) abuse and neglect investigation, (4) restrictions on group home (congregate care) placements, (5) use of SCDSS offices and hotels to place children, (6) placement of children in family foster homes, (7) placement instability in foster care, (8) therapeutic foster care placements, (9) sibling placement, (10) placement of foster children exiting SCDJJ, (11) visitation with sibling and parents, (12) improvement in the provision of medical and mental health care, and (13) placement needs assessment. *Michelle H.*, 2:15-cv-00134-RMG, Dkt. No. 32-1. All of these issues were examined to some extent during the W.S. trial because SCDSS failed in addressing these metrics and W.S. was directly harmed because of these failures.

Robert Butcher regularly provides feedback and information to Children's Rights to assist the monitoring of SCDSS and provide for the safety and wellbeing of foster children. This includes anecdotal information garnered from clients, foster children, and parents and obtained during the process of litigation in various courts, sharing depositions of SCDSS officials, and other information relevant to the *Michelle H.* class action.

Robert Butcher is considered a leader in South Carolina children's advocacy and in prosecuting institutional child abuse cases. His knowledge and experience has come through trial

and error, an ability to adapt and overcome adversity and sometimes, and a justice system that has

not been ready to change.  The costs and expenses of the *Johnson* case was borne at his expense

in an effort to change the qualified immunity standard for SCDSS caseworkers.  Robert Butcher

and the *Johnson* family had full knowledge that a win – changing the qualified immunity standard

– would still be the death of the case.  But they also knew that the change in the qualified immunity

standard would help protect thousands of foster children in South Carolina, North Carolina,

Virginia, West Virginia, and Maryland.

He has been willing to work pro bono in all courts in order to make social and legal changes

for the benefit of his clients and our society in general.  He has worked pro bono with younger

attorneys to assist them in bringing their child abuse cases.

Recently, Robert Butcher has obtained the following verdicts:

- March 2017 – *Baby Girl Smith v. SCDSS*, 2015-CP-42-03147 – 3.75 million dollar verdict in Spartanburg Common Pleas;
- June 2017 – *Stephens v. SCDSS*, 2015-CP-28-00762 - $225,000 verdict in Kershaw County Common Pleas;
- March 2018 – J.M. v. SCDSS, 2016-CP-28-00177 - $150,000 verdict in Kershaw County; and
- March 2018 – *State v. Dickens*, 2018-GS-08-00245 and 2018-GS-08-00246 – Not Guilty Verdict in Death of a Vulnerable Adult case.

Robert Butcher has prosecuted or is prosecuting the following child abuse cases in District

Court as well as many others in state court:

- *N.G. v. SCDSS*, 0:10-cv-02973-CMC;
- *J.H.M. v. SCDSS*, 2:17-cv-03437-RMG;
- *A.L. v. SCDJJ*, 3:12-cv-03617-CMC-PJG;
- *T.M. v. SCDSS*, 3:15-cv-02084-TLW;
- *K.C. v. SCDSS*, 3:15-cv-04670-MGL;
- *J.M. v. SCDSS*, 3:16-cv-01139-MGL;
- *K.H. v. SCDSS*, 3:16-cv-02224-JFA;
- *R.C. v. SCDSS*, 3:16-cv-03938-DCC;
- *M.M. v. SCDSS*, 3:17-cv-00416-RMG;
- *Beasley v. School District Five of Richland and Lexington Counties*, 3:17-cv-00416-RMG;

- *Jackson v. South Carolina Department of Social Services*, 8:06-cv-03662-HFF;
- *Doe v. Haley*, 8:13-cv-01772-GRA

Robert Butcher also provides substantial pro bono representation of parents and relatives in child abuse and neglect proceedings in family court to assist parents in meeting their treatment plans, in returning children home, and/or to the safety of a relative placement if the parents cannot make the changes necessary to safely care for their children. Robert Butcher has also presented a CLE on child abuse proceedings at the South Carolina Association of Justice and he has recently testified before the South Carolina Senate Committee on Family and Veteran's Services in opposition to Senate Bill 531, which restricted access to records at Children's Advocacy Centers.

He also works with the NAACP Legal Defense Fund on certain civil rights matters and has received referrals from the South Carolina ACLU. He regularly contributes information to Children's Rights to assist them in improving SCDSS and our child welfare system.

Robert Butcher was also on the District Court's pro bono list and has tried three prisoner § 1983 cases. This included *Tedder v. Johnson*, which the Public Justice Center was kind enough to take to the Fourth Circuit and obtain a reversal and remand on the issue of exhaustion of administrative remedies under the PLRA. *Tedder v. Johnson*, 527 Fed.Appx. 269 (4th Cir. 2013) (Unpublished).

He billing rate is $275.00 an hour, which is what he currently charges his clients in the rare instances that he takes on an hourly case. While $275.00 may seem fair to middlin' for a big city lawyer from Columbia or Greenville, this is a top tier rate in a small town like Camden, South Carolina. Robert Butcher's paralegal charges $100.00 an hour.

### ii. Heather Hite Stone.

Heather Hite Stone graduated from Davidson College in 2001, *cum laude* and *Phi Beta Kappa*, with a B.A. degree in Political Science. She then attended the University of Georgia

School of Law on an academic scholarship.  During law school she received the CALI award for

Legal Ethics and Professionalism.  After clerking for two large defense firms in Greenville in the

summer of 2003, she earned her J.D. degree in 2004, graduating *cum laude*. She was admitted to

the South Carolina Bar in November 2004.  She returned to her hometown of Abbeville to

practice law with her father and brother.  Her passion for fighting for abused and neglected

children was inspired through her family court work and in particular her representation of the

South Carolina Guardian ad Litem program in SCDSS abuse and neglect actions in Abbeville

County.  In her seven-year representation of the Guardian ad Litem program she learned about

the foster care system and the plight of abused and neglected children.  While Ms. Stone handles

all sorts of injury cases, since 2013 she has focused her practice on bringing cases on behalf of

abused and neglected children.  Heather Stone met Robert Butcher during their joint

representation with Children's Rights of John Doe in the *Doe v. Haley* case, as referenced herein.

     Heather Hite Stone is "AV" rated by Martindale Hubbell and was honored with a

Leadership in Law Award in 2018 from SC Lawyers Weekly.  She is a former member of the SC

Bar's Judicial Qualifications Committee.  Since 2012 she has been serving on the Board of

Governors for the South Carolina Association for Justice and is currently the chair of the Tort

Claims Committee. She has instructed other lawyers at various CLEs on how to bring cases on

behalf of abused and neglected children.

     Heather Hite Stone charges $275 an hour for her work.  This is a top tier rate for a small

town like Abbeville, South Carolina.

     Recently, Heather Stone has obtained the following verdicts/settlements in child abuse

cases:

- August 2015 – *Doe v. Haley*, 8:13-cv-01772-GRA – Confidential settlement amount

- March 2017 – *Baby Girl Smith v. SCDSS*, 2015-CP-42-03147 – 3.75 million dollar verdict in Spartanburg Common Pleas;
- April 2017 – *Snow v. SCDSS*, 2014-CP-04-0925 – Confidential settlement amount
- November 2017 – *Roe v. SCDSS*, 2014-CP-23-04140 – Confidential settlement amount
- August 2017 – *Estate of Kameron Ellis v. SCDSS*, 2016-CP-39-0445 – Confidential settlement amount
- December 2018 – *Jai-bien Anderson v. SCDSS*, 2018-CP-23-00088 – Confidential settlement amount
- January 2019– *C.S. v. SCYAP, SCDSS, et. al.*, 8:17-cv-03308—Confidential settlement amount

Heather Stone is currently prosecuting the following child abuse cases:

- *C.V. v. SCDSS*, 7:18-cv-01193-BHH
- *C.H. v. SCDSS*, 7:18-cv-01725-TMC
- *Stowe v. SCDSS,* 2014-CP-36-226
- *M.M. v. SCDSS,* 2018-CP-22-00481
- *A.C. v. SCDSS,* 2019-CP-42-00028
- *C.C. v. SCDDSN*, 2018-CP-21-2366
- *N.S. v. SCDSS,* 2019-CP-23-00267

### iii.    Thomas E. Hite, III.

Tombo Hite and Robert Butcher are law school classmates and have been practicing for approximately the same amount of time.  He is a graduate of Presbyterian College and University of South Carolina School of Law.  Tombo is an "AV" Rated lawyer by Martindale-Hubbell.  He has been practicing law for over 12 years and focuses his attention in the areas of personal injury, and more recently child abuse cases.  He currently serves on the South Carolina Association for Justice Board of Governors as the Eighth Circuit Representative.  He is the City Attorney for the City of Abbeville and is a Board Member for the Burton Center Foundation.

Tombo Hite charges $275 an hour for his work.  This is a top tier rate for a small town like Abbeville, South Carolina.

### iv.    Thomas E. Hite, III.

Thomas E. Hite, Jr. was admitted to practice in South Carolina in 1978. He graduated from the University of South Carolina in 1975 and the University of South Carolina School of Law in 1978. He has been actively trying cases in South Carolina since 1978 and is "AV" rated by Martindale Hubbell. He is a member of ABOTA (American Board of Trial Advocates) and is a permanent member of the Fourth Circuit Judicial Conference since 1998. He served on the SC Bar Character and Fitness Committee since 1992, including a several stents as chairmen.

Tommy Hite charges $375 an hour for his work. This is a top tier rate for a small town like Abbeville, South Carolina for an attorney with forty years of experience.

### b. Attorney's Hourly Rates.

The above rates are well below other rates awarded by this Court or other courts in this state.[4] For example, in this Court's recent case of *South Carolinians for Responsible Government v. Krawcheck*, 2012 WL 2830274 (D.S.C. July 9, 2012), this Court awarded fees at a rate of $425 per hour to Kevin Hall, Esq., who was admitted to the Bar in 1991. It awarded Patricia Harrison $425 per hour in *Doe v. Kidd*, 2018 U.S. Dist. LEXIS 25532, 2018 WL 929670 (D.S.C. February 16, 2018). A paralegal fee of $140 an hour was recognized in *Doe v. Kidd*.

### c. Hours spent on litigation.

When Defendants leave no stone unturned in absolutely relentless litigation, they are in no position to complain that Plaintiff spent too much time. During the course of litigation, Defendants have obstructed discovery, mislead the Court regarding an attorney drafting disciplinary letters when their own employee had previously testified to drafting the letters, and misstating the Court's own rulings to the Court. Defendants rarely consented to discovery issues even when the Court

---

[4] The rates are of course current rates for all time spent. The Fourth Circuit has long held that this is the ordinary way to compensate for delay in payment, *Daly v. Hill*, 790 F2d 1071, 1080-81 (4th Cir. 1986), so plaintiff follows this method.

kindly alerted the parties to where it was headed. While the tenor and tone of the litigation changed immeasurably after Defendants' co-counsel left, the Defendants continued to argue indefensible positions such as attorney-client privilege and work product privilege for disciplinary documents, producing evidence in five or six point font when it was printed in twelve point font in the ordinary course of business, and arguing that Plaintiff's request for his whole file was not specific enough to also request associated emails and other documents, even when emails and other documents were specifically requested in Plaintiff's discovery requests.

The time spent on this litigation through April 4, 2019, is listed below, as shown in the time sheets attached to the Declarations of Robert Butcher, Heather Hite Stone, Thomas E. Hite, III, and Thomas E. Hite, Jr.[5]

| Name | Hourly Rate | Hours[6] | Total |
|------|------------|----------|-------|
| Robert Butcher | $275 | 2,447.2 | $672,980.00 |
| Deborah J. Butcher | $275 | 3.0 | $.   742.50 |
| Heather Hite Stone | $275 | 547.2 | $138,801.67 |
| Thomas E. Hite, III | $275 | 128.8 | $ 35,362.50 |
| Thomas E. Hite, Jr. | $375 | 73.6 | $ 20,340.00 |

Paralegals for Robert Butcher worked a total of 108.8 hours at the rate of $100.00 an hour for a total of $10,880.00.[7] Mary Kate Leggieri, Paralegal for Hite and Stone, billed 5.1 hours for a total of 344.50, which is at a rate of $67.55 an hour.[8]

As a comparison, this Court recognized that attorneys in of *South Carolinians for Responsible Government v. Krawcheck* spent 1700+ hours in a district court proceeding and in

---

[5] Time on the fee issue to April 4, 2019 is included. *Kerns v. Consolidated Coal Co.*, 247 F3d 133 (4th Cir. 2001).

[6] A breakdown by hours is found in the following documents: For Robert Butcher, Deborah Butcher, Exhibit 4, *136-150; For Heather Hite Stone, Tombo Hite, and Tommy Hite, Exhibit 5, *38.

[7] A breakdown by hours for Tiffany Brown, and Jessica Mays is found in, Exhibit 4, *151-158.

[8] A breakdown by hours for Mary Kate Leggieri is found in, Exhibit 5, *38.

*Doe v. Kidd*, recognized 1079 hours.  The Fourth Circuit recognized 1770 hours in *Doe v. Kidd*, 656 Fed.Appx 643 (4th Cir. 2016) (Unpublished).   Robert Butcher tracked his time in the companion case to this matter, *Doe v. Haley* case, and compiled 730 hours from February 2013 through March 2014.

### d.  Barber's "Reasonableness" Factors.

Rule 54.02 of this Court's Local Rules sets forth the 12 Barber factors as follows:

(1) time and labor expended;
(2) novelty and difficulty of the questions raised;
(3) skill required to properly perform the legal services rendered;
(4) attorney's opportunity costs in pressing the instant litigation;
(5) customary fee for like work;
(6) attorney's expectations at the outset of litigation;
(7) time limitations imposed by the client or circumstances;
(8) amount in controversy and the results obtained;
(9) experience, reputation and ability of the attorney;
(10) undesirability of the case within the legal community in which the suit arose;
(11) nature and length of the professional relationship with the client; and
(12) attorneys' fees awards in similar cases

**Time and Labor Expended and Novelty and Difficulty of the Questions Raised.**

SCDSS operates behind a veil of confidentiality.[9]  It uses the veil as both a sword and a shield, hiding its bad acts from the public and the families it has harmed and using confidentiality as the legislature intended – to protect the privacy of the families and children it serves.  SCDSS is exempt from Freedom of Information Act Requests and there are no mechanisms to verify the data it submits to the public, the South Carolina General Assembly and the United States Department of Health and Human Services.

---

[9] S.C. Code Ann. § 63-7-1990; S.C. Code Ann. § 63-9-780(C), HIPAA statutes and regulations (42 U.S.C. § 300gg and 29 U.S.C § 1181 et seq. 42 USC 1320d, and 45 CFR 164), and social work professional ethical standards for confidentiality.

When SCDSS allows children to be raped or harmed on its watch, SCDSS uses confidentiality to limit transparency, limit inquiry, and subvert justice. As the Court saw in this case, SCDSS lies to the entities it is required to report to, such as the Foster Care Review Board and the Family Courts of South Carolina. Even its Office of General Counsel has lied to this Court about who drafted the disciplinary letters of Cassandra Daniels and Ursula Best. Dkt. No. 227, *8 and 227-2.

SCDSS often does not provide proper treatment to children in its custody, let alone to children it harms. By failing to provide proper mental health treatment, medical care, and education, it passes the responsibility on to our society when these children age out of the system. This burden is born by taxpayers as they shoulder the responsibility of rehabilitating these young adults in our criminal justice system,[10] treating them in our mental health system, providing economic services (welfare) and disability for untreated mental health issues, and through subsequent victimization of members of our society. Lack of treatment also causes these young adults to lose their children to foster care, creating a vicious cycle that repopulates the foster care system.

While this litigation directly benefits clients, it also benefits society as a whole because it requires SCDSS to address to the public when SCDSS allows foster children to be raped or abused. These actions, which become part of the public record, provide our legislature with information it would not normally have review the Agency's actions and failures to act. This litigation has also allowed public interest law firms, such as Children's Rights, to file the *Michelle H.* class action

---

[10] Plaintiff's counsel has for years informally and formally encouraged defense attorneys, prosecutors, and judges to ask criminal defendants about their experiences in foster care and subsequent treatment. While this does not excuse criminal behavior, it can allow the state and the Courts to fashion a sentence that addresses the roots of a criminal defendants' problems and not simply punish these behaviors.

which has resulted in this Court's appointment of independent monitors to report on the agency's progression towards institutional changes that protect the safety and welfare of our society's unwanted children.  Counsel for Plaintiff, Robert Butcher and Heather Hite Stone, are able to share information with Children's Rights to report both problems and successes with the Court's monitors.  For instance, it was learned during this matter that SCDSS Out of Home Abuse and Neglect Division does not presently track incidents of abuse and neglect in foster care and group homes to analyze trends of abuse and neglect at the macro level, in the system as a whole, and at the micro level, in individual group homes or within particular programs.  The Court saw during the trial of this matter that the lack of institutional controls, quality assurance, and data analysis allowed the creation of an environment where sexual abuse was part of the foster care experience at Boys' Home.  Sharing such information does not provide Plaintiff's counsel any benefit.  It is for the benefit of foster children and our society.  If Plaintiff's counsel were in this just for the money, they would have no interest in the foster care system becoming safer for foster children.

This matter is a companion case to *Doe v. Haley*, 8:13-cv-01772-GRA, wherein the Plaintiff was jointly represented by Robert Butcher, Heather Hite Stone, Tommy Hite, and Children's Rights, in a test-case for Children's Rights.  While many of the same documents and witnesses were presented, the analysis of the evidence and scope of questioning differed substantially.  An additional complexity was caused by the requirement to analyze prior testimony and vet the thousands of documents produced by Defendants with the thousands of documents previously produced in the *Doe* case to see what Defendants were holding back.  For instance, even after being told twice by the Court to produce the smoking gun emails from BHOTS to Cassandra Daniels, SCDSS claimed it did not have the emails.  Since Plaintiff's counsel already had the emails, they finally gave up with the thought that if SCDSS were so brazen to deny that

they possessed previously produced evidence, it would most likely not produce any additional smoking gun evidence without requiring the expense of a computer expert.

Foster Children have large files. Foster Children with problems have enormous files. The Defendants produced about 7,502 pages of documents. Plaintiff was able to obtain more of W.S.'s documents than SCDSS had in its possession through medical requests and subpoenas. By the end of the case, Plaintiff obtained, reviewed, and produced 14,560 pages of general documents to Defendants. Another 7,233 documents were obtained from BHOTS by subpoena.

SCDSS claimed it could not produce any training materials from its contractor, the University of South Carolina. Plaintiff subpoenaed SCDSS's training files. USC's Center for Child and Family Studies produced 146,000 pages of training materials related to the Child Welfare Basic Course and other mostly relevant trainings. This information was important and relevant because both Cassandra Daniels and Ursula Best disputed the existence of certain training and disputed being trained in numerous basic Social Work Professional Practices such as (1) recognizing signs of sexual abuse in children and (2) being trained to speak with children regarding abuse and neglect. This subpoena production had to be catalogued, bates stamped, and produced to Defendants. Excerpts of this information was subsequently used in trial. See Trial Exhibits 30-40.

Although the Court ended up limiting the amount of evidence Plaintiff could use at trial regarding other children, the Court has been thoroughly briefed on the fact that the BHOTS children had sexual problems. Many of the children who sexually abused W.S. were also extremely violent, which can explain W.S.'s being sexually abused by these children and why he did not disclose the sexual abuse until much later.

None of the time and effort Plaintiff spent in pursuing discovery or applying for motions in limine was wasted in this matter.  It was stated above that since this is the first § 1983 trial after the *Johnson* decision, many of the disputes and legal principles in this matter were new to the parties and the Court.  The body of supporting and guiding decisional law was scant, if not non-existent.  The chance that the decisions in this matter would be appealed by Defendants in this matter was substantially increased because many of the Court's decisions are not supported by a body of supporting decisional law.  As the Court knows, many of its decisions are discretionary.  Plaintiff's counsel has a duty to his client to support motions with evidence.  This allows the Court to properly evaluate the evidence.  This also allows an appellate court to review these decisions for abuse of discretion at a later point.

As such, Plaintiff was required to discuss and submit mounds of evidence to support his position.  While a car wreck lasts a few seconds and a medical practice procedure requires the analysis of few minutes to a few hours, institutional child abuse can last years – Six years in this instance.  Plaintiff was required to show absence of mistake, intent, and knowledge on the part of Daniels and Best, beginning when W.S. was first taken into care in 2006 through April 19, 2011.  Rule 404(b), Fed.R.Evid.  Plaintiff had to show the same with OHAN and the chronic sexual abuse of boys at BHOTS from 2006 to 2011.

There is no easy and time-saving way to present this evidence to the Court and have the same evidence effectively preserved for further review by a later court.  Motions were time consuming and painstakingly accurate.

As an example, Plaintiff's counsel has helped the District Court flesh out the application of federal common law in addressing SCDSS's assertion of confidentiality of foster children's files pursuant to S.C. Code Ann. § 63-7-1900.  When this was first addressed by the District Court in

*NG. ex rel. Gaymon v. SC Dep't of Soc. Servs.*, No. 0:10-CV-02973-CMC, 2011 WL 1642331 (D.S.C. May 2, 2011), Judge Currie ordered an in-camera review.  Since 2011, this Court has found that the District Court is not bound by South Carolina confidentiality statutes, with one exception, *R.C. v. S.C. Dep't of Soc. Servs.*, No. 3: 16-cv-03938-DCC, ECF No. 37 (D.S.C. Nov. 2, 2017) (Anderson, J.).  See *J.H.M. by & through Elliot v. S.C. Dep't of Soc. Servs.*, No. 2:17-CV-3437-RMG, 2018 WL 3742613, at *2 (D.S.C. Aug. 7, 2018) (Gergel, R.); *W.S. v. Daniels*, No. 8:16-CV-01032-DCC, 2018 WL 690066 (D.S.C. Feb. 1, 2018) (Coggins, J.); *W.S. v. Daniels*, 258 F. Supp. 3d 640 (D.S.C. 2017) (Lewis, J,); *J.M. v. S.C. Dep't of Soc. Servs.*, 3:16-cv-01139, ECF No. 40 and 42, (D.S.C. Dec. 19, 2016) (Lewis, J.).  Judge Anderson subsequently adopted this reasoning in *K.H. v. S.C. Dep't of Soc. Servs.*, No. 3:16-cv-02224-JFA, ECF No. 50, despite ruling opposite in *R.C.*

Plaintiff's Counsel also showed a complete mastery of the file.  Of the 28,793 pages of documents exchanged in discovery,[11] Plaintiff was able to locate and use individual documents during the examination of Best and Daniels to impeach their testimony on several occasions.  This only comes through thorough preparation and the use of excellent organization skills.

**Skill Required to Properly Perform the Legal Services Rendered.**

These cases require familiarity with the particularities of § 1983, which is often considered to be as intelligible as Chinese calculus to the average South Carolina lawyer.  Add in the requisite knowledge of social worker professional practices, knowledge of the psychology of sexual abuse, physical abuse, and neglect, understanding of child welfare theory, the arcane policies and procedures of SCDSS, intimate understanding of our family court system, the Foster Care Review

---

[11] This does not include the 146,000 pages of training materials obtained by subpoena by Plaintiff.

Board System, special education law,[12] Medicaid law, policies, and procedures, adoption law, and obtaining post adoption resources. There are no books or CLEs on this type of practice.

In addition to the knowledge listed above, the lawyer still needs to know how to try a case. During the trial of this matter, Plaintiff cannot recall counsel being called down by the Court for any trial issues other than pushing for as much evidence as they could present to the jury. There were no theatrics, Plaintiff knew how to present evidence, and when the Court sustained an objection, Plaintiff either moved on or sat down and shut their mouths, which is expected.

As counselors of law, Plaintiff's counsel must guide clients and families through mental health crisis (plural) and obtaining mental health services. Some of these children have not learned to dress for Court, obtain jobs, driver's licenses, insurance, and medicine. Sometimes Plaintiff's counsel has to explain the birds and the bees and birth control, how to self-protect, and how to obtain housing and transportation. These foster children lack trust due to abuse and abandonment by their families and the foster care system that abused them. These foster children are dependent upon counsel because no one has ever fought for them during their short lives.[13]

### Opportunity Cost to Counsel.

As this case is three years old, numerous other cases have been put on the back burner because of the complexity of this case and the delays caused by Defendants. Counsel for Plaintiff

---

[12] The majority of our clients have Individualized Education Programs. Our advocacy does not start and stop at the doors of the District Court. Counsel in this matter attend IEPs, family court, juvenile court, Foster Care Review Board hearings, and SCDSS Treatment Plan meetings to protect the interests of our clients. This continues for years after the case is tried or settled, and often these services are provided pro bono. Robert Butcher recently made a pro bono appearance in December 2019 for Jane Doe in the *Johnson* case, nine years after the Fourth Circuit issued its opinion.

[13] Heather Hite Stone, Tombo Hite, and Robert Butcher have all spent countless hours with foster children meeting with DJJ, seeking food and necessities from charitable organizations, attending school meetings, attending medical appointments not related to litigation, and providing parental advice.

is now in the position of scrambling with this very same Court to either meet or extend scheduling order deadlines in numerous other cases. Four trials scheduled for March were delayed because of this matter.

Robert Butcher has almost solely worked on this matter since March 2019. Many all nighters were held by counsel in organizing discovery and drafting motions while still maintaining the semblance of a legal practice. If one worked 40 hours a week for a year, he would work 2,080 hours. The more than 2,400 hours spent on this case over a three-year period show that this case clearly impacted both his practice and his wife's practice of law. There has been little time for accepting and prosecuting new cases and much of this work has been undertaken by Deborah Butcher. As the witnesses and the Court in this case were located in the upstate a one hour hearing or a short deposition required at least five hours of driving for Robert Butcher.

Many other clients are waiting for their cases to be filed because of the work load this case presented. Heather Hite Stone and Tombo Hite have had to turn away cases because of the impact this matter has had on their practice. This is especially heartbreaking because there are no other attorneys who can prosecute these cases. Ms. Stone's husband has been appalled and frustrated at how much time she spent at home working out of devotion to this case.

### Customary Fee for Like Work.

The supporting Declarations filed in support of this motion testify that the requested rates are not only reasonable, they are low. The customary fee for like work is not the same rate Plaintiff's counsel charges in their small towns. There is no like work to compare such fees to other than fees awarded in the South Carolina District Court, which appear to run at $400 an hour. Most of Plaintiff's Counsel's litigation is conducted in the District of South Carolina Court. Judge Gergal used the county of filing in determining "the relevant community" in *Morris v. Bland*, 2015

U.S. Dist. LEXIS 184384, C/A 5:12-cv-03177-RMG (January 15, 2015).  The problem with using

a county such as Abbeville, where the second complaint was filed, is that there are no comparators

for the Court to utilize.

Declarations have been provided by John D. Elliott, Andrew S. Radeker, and W. Hugh

McAngus, Jr., all longtime distinguished members of the South Carolina Bar.  Exhibits 7-9.  An

enhancement for like work would result in the following:

| Name | Hourly Rate | Hours | Total |
|------|-------------|-------|-------|
| Robert Butcher | $400 | 2447.2 | $978,888.00 |
| Heather Hite Stone | $275 | 547.2 | $218,880.00 |
| Thomas E. Hite, III | $275 | 128.8 | $ 51,520.00 |
| Thomas E. Hite, Jr. | $375 | 73.6 | $. 29,440.00 |

**Counsel's Expectations at the Outset of Litigation.**

Plaintiff's counsel always knew that this case was an uphill battle.  The record clearly

showed that W.S. was involved in sexual abuse with younger children at the end of his time at

BHOTS.  No amount of explaining that W.S.'s sexual behavior during the dog pile incident was

normal and predictable for a sexualized child can reconcile these particular facts in some juror's

minds.  Counsel for Plaintiff also knew that W.S.'s current age, sexuality, and avoidance of mental

health treatment were factors to consider with a conservative jury in the upstate of South Carolina.

It is not as easy for the jury to see the innocence of a young child when there is a twenty-one-year-

old man sitting in front of them.  While Counsel for Plaintiff asked the Court to preclude evidence

of Plaintiff's sexuality as an adult, there were plenty of records in the exhibits that showed his

struggles with sexuality during his teenage years.  And while W.S.'s avoidance of mental health

treatment was part and parcel to his diagnosis of PTSD, it is difficult for jurors to understand.

Finally, there was concern of "rape-fatigue".  There was so much sexual abuse at BHOTS that it

boggled the mind.  From valuing a lawsuit, one or a few events of sexual abuse seem to be more valuable to a jury than chronic sexual abuse.

What Plaintiff's counsel knew at the outset of this case as follows:  (1) that we were plowing new ground, (2) that there were no verdict reporters for "chronic sexual abuse in foster care group homes", and (3) that the Plaintiff might not be viewed as completely innocent, despite what the jury instructions, SCDSS's own training materials, and the witnesses testified to during trial.

Counsel also expected that the Insurance Reserve Fund (IRF) would not offer a decent settlement amount because of its prior history of making low ball offers.  The IRF only offered $25,000 in in *Stephens v. SCDSS* and under $50,000 in *J.M. v. SCDSS*.  Plaintiff's counsel obtained verdicts for $225,000 and $150,000, respectively.  The offer in *Baby Girl Doe v. SCDSS* was $225,000 at mediation, was withdrawn after mediation and Plaintiff's counsel obtained a $3.75 million dollar verdict.  The IRF only offered $300,000 in this matter with Plaintiff obtaining a total verdict of $534,000.

The Declarations of John D. Elliott, Andrew S. Radeker, and W. Hugh McAngus show that if the expectation of a reasonable fee for prevailing is not met, the prospect of ever finding a lawyer willing to do a case of this sort will be virtually impossible.

**Time Limitations Imposed.**

District Court times lines are extremely demanding.  When faced with an opposing party who's only purpose is to delay and impede discovery, the timelines become almost unmanageable.  Plaintiff strongly believes that he was prejudiced by Defendants' delay and Defendants' willingness to take advantage of this Court's policy to push parties to work discovery issues out without court involvement.  While this policy is effective with some SCDSS counsel, it was

extremely frustrating because Defendants were intractable in conceding some of the most obvious issues.  Plaintiff repeatedly had to apply to the Court for extensions to the scheduling order because Defendants' abused the discovery process.  Plaintiff does believe that the Court's admonition to Defendants to stop the discovery abuse in August 2018 assisted in moving things along.

**Results Obtained.**

Plaintiff obtained the following verdicts:

Cassandra Daniels § 1983 for failure to protect:
- $15,000 damages
- $15,000 punitive damages

Cassandra Daniels § 1983 for failure to treat:
- $15,000 damages
- $15,000 punitive damages

Ursula Best § 1983 for failure to protect:
- $18,500 damages
- $18,500 punitive damages

Ursula Best § 1983 for failure to treat:
- $18,500 damages
- $18,500 punitive damages

SCDSS Tort Claims:
- $400,000 damages
- 3 occurrences

It has taken nine years since the *Johnson* case was issued by the Fourth Circuit to get to this point.  Past clients have taken low ball offers because of their finances, other clients have not wanted to testify in Court after facing brutal depositions, and still other clients have received sizeable settlements from private foster care providers and wished to stop litigation.  The easiest part of this case was filing the complaint.  Nothing else was easy.  Plaintiff's counsel continuously fought the Defendants' discovery abuse and delaying tactics.

Plaintiff's counsel is very proud to have not only obtained a verdict for Plaintiff, but to also obtain punitive damages against Daniels and Best. While reading juries and their verdicts can never be called a science, it appears that Denials and Best each were rendered damages and punitive damages for a total of two years pay, which is a pretty substantial sum when one remembers that the jury included only one college graduate.

Plaintiff did not lose a single issue. Although Plaintiff was not allowed to amend his complaint, Plaintiff asserts that the Court ruled that the amendment was not timely and Plaintiff further asserts that the reason it was not timely was due to Defendants' delay and discovery abuse. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably spent on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (cite and footnote omitted).

### Experience, Reputation, and Ability of Counsel.

Robert Butcher has earned an excellent reputation in the field of civil rights for foster children. He receives referrals from attorneys around the state and his pro bono prosecution of *Johnson* to the Fourth Circuit Court of Appeals has and will continue to create visible systemic changes in SCDSS and our child welfare system. As a trial lawyer, Robert Butcher has won the last four trials against SCDSS Defendants. None of these trials were easy and each of these trials

involved mountains of documents.  He has demonstrated superior knowledge of all of the materials, subject matters, issues, and law in this case.

Heather Hite Stone has also earned an excellent reputation in this area.  As stated above, she is passionate about fighting for justice for abused and neglected children.  She gained knowledge about the foster care system through her advocacy on behalf of the Guardian ad Litem program, but after several years she concluded that she could make the biggest impact by representing individual children who were abused in the system.  Since then, her relentless pursuit for justice has earned her the respect of her peers. She has focused her practice on advocating for abused and neglected children with great success.  Because of the sheer volume of materials and time required for this case, she found it necessary to enlist the assistance of her father and brother, who are also excellent attorneys in their own right.

### Undesirability of the Case Within the Legal Community.

Although there can be the prospect of large fees in these types of cases, few attorneys in South Carolina have accepted these cases.  Just the subject matter of child sexual abuse turns some attorneys away from these cases.  Most Foster Children have problems from abuse and neglect and they often do not have clean records, which can cause attorneys not to take their cases.

The complexity is multiplied when one factors in knowledge of social work professional practices, knowledge of the psychology of sexual abuse, physical abuse, and neglect, understanding of child welfare theory, the arcane policies and procedures of SCDSS, intimate understanding of our family court system, the Foster Care Review Board System, family law, administrative law, Medicaid law, and special education law.  Then, add in § 1983, qualified immunity, and the knowledge of federal practice, there are not too many takers of these types of cases.

Counsel for Plaintiff have seen other attorneys attempt these cases. It is like watching a car wreck lawyer file a medical malpractice case. Bad things happen and the case ends in summary judgment or with a nuisance settlement whenever defense counsel has churned all of the money out of the cases. These cases cannot be undertaken by a general practitioner simply by taking a CLE or attending a boot camp seminar. The skills and knowledge have been obtained through trial and error, hard work, study, and intense committment in the vocation itself.

South Carolina did not even have an expert in child welfare practices until Robert Butcher recruited Susan O'Toole in 2016. SCDSS generally uses its own employees to provide expertise in these cases and former SCDSS employees often are employed in some manner within the system after they retire.

### Nature and Length of Professional Relationship Between Counsel and Client.

Client was referred to Plaintiff's counsel by his former guardian ad litem after Plaintiff's counsel obtained excellent results in *Doe v. Haley*, the W.C.S. case, which also originated in Abbeville, South Carolina. Heather Hite Stone was the attorney for the Guardian ad Litem while W.S.'s child protective services, termination of parental rights, and permanency planning case proceeded through the Abbeville Family Court from 2006 until 2012.

### Attorneys' Fees Awards in Similar Cases.

Other fee awards by this Court and others furnish a basis both for the hourly rates and overall fees sought here. For example:

- *Moultrie v. Charleston County Council*, No. 2:01-0562-23 (D.S.C. Aug. 8, 2005)($712,000+ in fees and costs in voting case, with rates of $400 per hour)
- *Southeast Booksellers Ass'n v. McMaster*, No. 2:02-cv-03747-PMD (D.S.C. Sept. 8, 2005)($405,000+ in attorneys' fees in a free speech case, at rates of $400 per hour for South Carolina counsel and higher rates for out-of-state counsel)
- *SCRG v. Krawcheck*, No. 3:06-1640-MBS (D.S.C. July 9, 2012)($366,000+ in fees, costs and expenses in a political finance case, with rates up to $425 per hour)

- *Moore v. Cook*, No. 1:07-631-TVT (N.D. Ga. Oct. 31, 2012)($592,000+ in fees and expenses in a Medicaid case with rates up to $400 per hour in Georgia)
- *Layman v. State*, 376 S.C. 434, 658 S.E.2d320 (2008)($500 and $600 per hour for senior South Carolina lawyers in TERI class action)
- *Morris v. Bland*, 2015 U.S.Dist.LEXIS 184384 (D.S.C. January 15, 2015) ($400, $400, & $350 per hour for attorneys with 40, 26, and 15 years of practice)
- *Doe v. Kidd*, 2018 U.S. Dist. LEXIS 25532, 2018 WL 929670 (D.S.C. February 16, 2018) ($425 per hour for attorney's fees and $140 per hour for paralegal time)

The United States Supreme Court has stated, "although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in '"rare"' and '"exceptional"' circumstances. *Purdue v. Kenny A.*, 559 U.S. 542 (2010) (Citing *Pa. v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

The Fourth Circuit Court of Appeals views the enhancement factor narrowly. *Hyatt v. Barnhart*, 315 F.3d 239, 252 (4th Cir. 2002). "Technical knowledge" of a specific practice, such as social security law and its practice, is not enough to warrant enhancement. Plaintiff's counsel has shown the District Court through the trial and in their declarations that their skills and specialization are ***unique***, not only in South Carolina, but in the nation. *Id*. Although there are many general practitioners/jacks of all trades who dabble in family law, personal injury, administrative law, and civil rights, there are no others who have undertaken and driven governmental policy and judicial policy changes as the attorneys in this matter. It is not enough to claim failure to protect and failure to treat. Pulling the facts out of this case has required expert knowledge of family law, Medicaid law, social work practices, SCDSS polices and regulations, child protection laws, civil rights law, and more.

Plaintiff believes that he has shown good cause for the Court to enhance the award of attorneys fees and costs pursuant to *Purdue v. Kenny A.*, especially since Plaintiff's counsels' rates appear to be well below the going rate in South Carolina District Court. "When a plaintiff's

attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence, the outcome may be attributable to superior performance and commitment of resources by plaintiff's counsel." *Purdue v. Kenny A.*, at 554.

### Exceptional circumstances and the ability of the party to pay the fee

The Defendants attorney's fees, costs, and expenses are covered under the South Carolina Insurance Reserve Fund policy and have the ability to pay the fees. Defendants have also caused additional work in this case due to delay, bad faith discovery tactics, delay, refusal to obey the Court's guidance and orders, more delay, and denial of all facts and claims until opening argument. Plaintiff's counsel have shown a high degree of skill in a specialized area of law, which is reflected in their Declarations and above.

### e. Litigation Costs and Expenses.

The Declarations of Robert J. Butcher and Heather Hite Stone also identify out-of-pocket costs and expenses that are compensable under the fee statute, in the following amounts:

| | |
|---|---|
| Robert J. Butcher: | $28,191.65[14] |
| Heather Hite Stone: | $27,170.47[15] |
| **TOTAL:** | **$55,362.12** |

## III. Conclusion

The reality is that cases like this will never be popular, and even the prospect of a substantial fee will not induce many lawyers to take them. But if there is not an enhancement and a substantial fee in this case, no rational lawyer will ever take such a case, and the purpose of the attorney's fee statute to promote enforcement of federal law will utterly fail. Congress, in its law,

---

[14] Exhibit 4, *159-162.
[15] Exhibit 5, *35-37.

and the Fourth Circuit, have made clear that a fully compensatory fee is mandated here to maintain respect for the law.

Respectfully Submitted,

s//Robert J. Butcher
Robert J. Butcher
The Foster Care Abuse Law Firm, PA
509 Walnut Street
Camden, South Carolina 29020
P.O. Box 610
Camden, South Carolina 29021
Telephone: (803) 432-7599
Facsimile: (803) 432-7499
Email: rbutcher@camdensc-law.com

Thomas E. Hite, III
Heather Hite Stone
Hite & Stone
100 East Pickens Street
P.O. Box 805
Abbeville, SC 29620
Telephone: (864) 366-5400
Facsimile: (864) 366-2638
Email: heather@hiteandstone.com

**Counsel for Plaintiff W.S.**

April 5, 2019